HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTOPHER RICHARD CHAPIN,

                Plaintiff,

  v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA, MICROSOFT
CORPORATION, and the MICROSOFT
CORPORATION WELFARE PLAN,

                Defendants.

No. 2:19-cv-01256-RAJ

ORDER

## I.    INTRODUCTION

This matter comes before the Court on two motions.  Defendant The Prudential Insurance Company of America ("Prudential") filed a motion for summary judgment on Plaintiff Christopher Richard Chapin's ("Plaintiff") ERISA claims for long-term disability ("LTD") benefits and equitable relief.  Dkt. # 44.  On the same day, Plaintiff filed a motion for judgment on the Administrative Record ("AR") under Fed. R. Civ. P. 52 on those same claims against Prudential.  Dkt. # 49.

Having thoroughly reviewed the parties' submissions, the administrative record, and applicable law, the Court **DENIES** Prudential's cross-motion for summary judgment

ORDER – 1

and **GRANTS** Plaintiff's motion for judgment on the administrative record.  The Court first addresses Prudential's motion for summary judgment.  Dkt. # 44.

## II.    SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

In its pending motion, Prudential moves for summary judgment on Plaintiff's ERISA claims for LTD benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and equitable relief pursuant to § 1132(a)(3).  Dkt. # 44 at 7; Dkt. # 1 at 22-24.  Under § 1132(a)(1)(B), a beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Under 29 U.S.C. § 1132(a)(3), a beneficiary may bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other

ORDER – 2

appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

As Plaintiff correctly observes, the dispositive question before the Court for Plaintiff's first claim is whether the evidence in the administrative record shows that Chapin has a disability under the terms of the Plan.  Dkt. # 52 at 2.  Whether Plaintiff is disabled is a genuine issue of material fact that requires a review of the evidence.  *See Gordon v. Metro. Life Ins. Co.*, 747 F. App'x 594, 595 (9th Cir. 2019) (holding that "because the parties have produced conflicting medical opinions regarding [the plaintiff's] disability, those opinions create a genuine dispute of material fact").  The medical opinions provided by both parties here create a genuine dispute of material fact.  *See* AR at 55-56, 97-100, 112, 118-122.  Because the Court cannot decide whether Plaintiff is disabled as a matter of law without considering the evidence, Prudential is not entitled to summary judgment on this claim.  *See* 477 U.S. at 323.  The Court therefore **DENIES** Prudential's motion for summary judgment as to Plaintiff's claim for benefits under ERISA 29 U.S.C. § 1132(a)(1)(B).

With respect to Plaintiff's second claim, Prudential argues that it is entitled to summary judgment because the claim is "impermissibly duplicative" of Plaintiff's first claim for benefits.  Dkt. # 44 at 24.  The Court disagrees.  This Court has noted that although a plaintiff is barred from seeking duplicative relief in an ERISA action, a plaintiff is not barred from seeking different remedies under § 1132(a)(3) and § 1132(a)(1)(B).  *See Hancock v. Aetna Life Ins. Co.*, 251 F. Supp. 3d 1363, 1369, 1371-72 (W.D. Wash. 2017) ("[Plaintiff] is not precluded from bringing a Section 1132(a)(3) claim simply because she also brings a Section 1132(a)(1)(B) claim . . . ."); *see also Zisk v. Gannett Co. Income Prot. Plan*, 73 F. Supp. 3d 1115, 1118 (N.D. Cal. 2014) ("Courts of this district have found that (a)(3) claims remain viable even when an (a)(1)(B) claim is asserted, particularly where the relief sought in connection with each claim is distinct.").

ORDER – 3

Here, Plaintiff distinguishes the equitable relief he is seeking under § 1132(a)(3) to declaratory and injunctive relief compelling Prudential "to correct their claims-handling policies" to ensure that he will not be deprived of a full and fair review of claims within the required timelines.  Dkt. # 1 at 24-25.  Because these remedies are not available under § 1132(a)(1)(B), which provides only for recovery of benefits due under the terms of a plan, enforcement of rights under the terms of the plan, or clarity on rights to future benefits, the remedies sought in Plaintiff's two claims are not duplicative.  The Court therefore denies Prudential's motion for summary judgment on Plaintiff's second claim against Prudential seeking declaratory and injunctive relief pursuant to 29 U.S.C. § 1132(a)(3).

### III.   JUDGMENT ON THE ADMINISTRATIVE RECORD

On November 25, 2019, Plaintiff submitted the administrative record under seal. Dkt. # 26.  On February 19, 2020, Plaintiff and Defendants Microsoft and Microsoft Corporation Welfare Plan settled Plaintiff's STD claims and moved the Court to dismiss these claims with prejudice.  Dkt. # 34.  The Court granted the motion.  Dkt. # 35.  On May 8, 2020, Plaintiff filed the pending motion for judgment on the administrative record pursuant to Rule 52.  Dkt. # 49.  The Court now issues the following findings of fact and conclusions of law with respect to Plaintiff's two remaining ERISA claims seeking LTD benefits and injunctive relief.

### A.   FINDINGS OF FACT

1. Plaintiff has been employed as a software engineer by Microsoft from 2011 to the present.  Dkt. # 1 ¶ 12.

2. Prudential is an insurer that administers claims for short term disability ("STD") benefits under Microsoft's STD Payroll Policy and administers and insures LTD benefit claims on behalf of Microsoft and the Microsoft Employee Welfare Plan (the "Plan").  *Id.* ¶ 8.

3. Prudential issued the LTD Insurance Policy, which is governed by ERISA, to

ORDER – 4

Plaintiff in connection with the Plan.  *Id.* ¶¶ 14-15.

4. Prudential defines "disability" as related to its LTD Insurance Policy accordingly:

> You are disabled when Prudential determines that, due to your *sickness* or *injury*:
> - You are unable to perform the *material and substantial duties* of your *regular occupation*, or you have a 20% or more loss in your *monthly earnings*; and
> - You are under the *regular* care of a doctor; and
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:
> - you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience; and
> - you are under the regular care of a doctor.

AR 180 (emphasis in original).

5. The term "regular occupation" is defined as "the occupation you are routinely performing when your disability begins.  Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."  *Id.*

6. Under the plan, "[d]isabilities which, as determined by Prudential, are due in whole or part to mental illness have a limited pay period."  AR 932.

> Mental illness means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

7. As a Microsoft software engineer, Plaintiff worked on a team that powered "one of the largest scale services in the Office" with "35-40 million business seats on the service."  *Id.* at 749.  In his role, he was focused on "experimentation, live site analysis, automation design and implementation to monitor and validate e2e functionality, availability, capacity, freshness and performance of [the] large database."  *Id.*  His job description called for "[e]xceptional test aptitude, customer

focus and expertise in formal and informal testing techniques as well as quality measurement." *Id.*

8. On March 19, 2018, Plaintiff went to his primary care physician, Dr. Wallace Hodges. *Id.* at 29. Plaintiff reported anxiety and insomnia to Dr. Hodges related to "a supervisor who 'bullies'" him." *Id.* Plaintiff said he "worries constantly about work . . . can't turn his brain off at night and is consequently only getting about 4 hours sleep/night." *Id.* In his physical examination of Plaintiff, Dr. Hodges noted that he was "alert, attentive, intact memory, judgment, concentration," and "[n]ormal affect, mood," as well as normal speech, thought content, and processes. *Id.* at 31. In his Plan of Care, Dr. Hodges noted that "[i]n my experience, an inimical supervisor is one of the most inimical problems found in the workplace. Treating [Plaintiff's] mood deterioration cannot be done effectively without changing the environment." *Id.* Dr. Hodges recommended that Plaintiff "separate himself from his hostile work environment, initially with short term disability." *Id.* at 31-32. He noted that given Plaintiff's "circumstances," this was healthier than medication. *Id.* at 32. Dr. Hodges recommended that Plaintiff consult with a psychiatrist for further evaluation. *Id.* at 31.

9. March 20, 2018 was Plaintiff's last day of work. *Id.* at 15.

10. On March 22, 2018, Dr. Robert B. Olsen, a doctor of internal medicine and psychiatry, conducted an initial evaluation of Plaintiff, who had been referred to him through Dr. Hodges. AR at 102. Plaintiff reported that he was unable to perform his job, and described various problems including depression, anxiety, insomnia, nervousness, loss of appetite, decreased sexual desire, and suicidal thoughts. *Id.* In the evaluation notes, Dr. Olsen described Plaintiff's struggles at work following negative feedback and a poor performance review as the source of

ORDER – 6

his ailments. *Id.* at 103. Plaintiff reported the onset of depression and anxiety beginning in September 2017. *Id.* at 104-05.

11. Dr. Olsen diagnosed Plaintiff with Depression Disorder, Other Trauma or Stressor Related Disorder, due to occupational harassment, and Cognitive Disorder due to depression and several months of occupational harassment and sleep deprivation. *Id.* at 112.

12. Dr. Olsen conducted a mental status examination of Plaintiff during the visit. *Id.* at 47-48. Dr. Olsen gave Plaintiff a 10/10 on orientation, noted that he was able to repeat four disparate items immediately; complete serial sevens and spell a five-letter work forwards and backwards adequately; recall four out of four disparate items following several minute delay; name the last seven presidents in order; and successfully complete other tasks. *Id.*

13. He also wrote that "Mr. Chapin is advised that he should not return or attempt to return to employment at the Microsoft Corporation; that should he do so, he is placing his mental and physical health in jeopardy." *Id.*

14. Dr. Olsen noted that recovery was anticipated "within 6-12 weeks." *Id.*

15. Dr. Olsen provided material on workplace bullying and its impact on health outcomes in his evaluation notes. *Id.* at 49-51.

16. On May 9, 2018, Dr. Margaret "Lisa" Frank, a psychiatrist, reviewed Plaintiff's medical file, including some visit notes from Dr. Hodges and Dr. Olsen, on behalf of Prudential. *Id.* at 55. Dr. Frank concluded that "there is no evidence to support a functionally impairing condition." *Id.* at 55. Specifically, she noted that although Dr. Hodges and Dr. Olsen diagnosed Plaintiff with anxiety, "neither provider gives sufficient evidence to support impairment due to anxiety." *Id.* at 54.

17. On June 12, 2018, Dr. Frank provided an addendum to her original report after reviewing additional information from Dr. Olsen. *Id.* at 56. In it, she again

ORDER – 7

concluded that "the clinical evidence does not provide support for functional impairment due to the claimant's diagnosed psychiatric condition of anxiety disorder," even in light of the additional information. *Id.* Dr. Frank noted "a significant lack of objective data." *Id.*

18. On June 21, 2018, Dr. Olsen conducted testing of Plaintiff's cognitive abilities. *Id.* at 97-100. Dr. Olsen conducted the North American Adult Reading Test and additional tests examining "sustained attention, working memory, information processing, decision speed and psychomotor speed." *Id.* at 97-98. Plaintiff scored within the average range in verbal learning and recall for simple information, but "major deficits" were demonstrated in psychomotor speed as well as immediate and delayed recall. *Id.* at 98. On tests assessing his immediate and delayed recall, Plaintiff's scores of 12/24 on immediate recall and 9/12 on delayed recall indicated that he was "moderately impaired." *Id.* at 97. The results of Plaintiff's selective attention tests were "consistent, consistently slow, even ponderous." *Id.* Dr. Olsen noted that Plaintiff "appeared to lose sequential track of the next target," and had "difficulty scanning and locating the target" on Trail Making Tests, where Plaintiff's performance was in the 16th percentile for the first trial and in the 20th percentile for the second. *Id.* at 97-98.

19. Dr. Olsen noted that a test for "effort and possible feigning" was conducted and revealed that Plaintiff's performance was "credible," and there was no evidence of negative response bias or reduced effort or feigning. *Id.* at 97-98.

20. On October 4, 2018, Dr. Olsen provided an addendum with material "to document and quantify the symptoms of [Plaintiff's] cognitive impairment which prevent [Plaintiff] from returning to gainful employment at Microsoft." AR at 98. Dr. Olsen provided test results from on June 21, 2018 "as a limited measure of [Plaintiff's] current degree of cognitive impairment." *Id.* at 97. Dr. Olsen also noted that the tests "do not represent a complete neuropsychiatric battery; rather

the tests were chosen to examine sustained attention, working memory, information processing, decision speed, and psychomotor speed." *Id.* at 97-98. Dr. Olsen states that "[m]ore complex testing of executive functioning can be done if requested." *Id.* at 98.

21. Dr. Olsen also refuted Dr. Frank's earlier assessment that there was a lack of evidence supporting Plaintiff's functional impairment due to anxiety. *Id.* at 100.

22. Between March and October 2018, Dr. Olsen treated Plaintiff six times: March 23, June 1, June 26, August 15, September 24, and October 24. *Id.* at 94.

23. On October 15, 2018, Plaintiff's therapist, Diane Schachter, LMFT, submitted a letter to the Prudential Appeals Unit confirming her agreement with Dr. Olsen's diagnosis of depression, anxiety, and occupational post-traumatic stress. *Id.* at 68.

24. She further explained that "[t]hese symptoms which we are treating lead to [Plaintiff's] cognitive impairment. He describes consistent sleep deprivation, nightmares, suicidal ideation, and fear of losing his job." *Id.* She noted that Plaintiff follows "the CALM meditation program to deepen his facility with meditation and mindfulness," and is "active with processing his feeling and thoughts," as part of his recovery efforts. *Id.*

25. On December 13, 2018, Dr. Jeremy B. Hertza, a neuropsychologist contracted by Prudential, provided a peer review regarding Plaintiff. He reviewed information provided by Plaintiff, initial evaluation notes from Dr. Olsen, a statement and clinical visit summaries from Dr. Hodges, letters from Dr. Frank, and a letter from Ms. Schachter. *Id.* at 118.

26. Dr. Hertza noted that much of Dr. Olsen's reports and notes were illegible but concluded that "the documentation provided for review does not convincingly support psychiatric or cognitive impairment of a severity as to preclude gainful activity and as such, no neuropsychological restrictions and limitations are

ORDER – 9

recommended at this time." *Id.* at 120.  Dr. Hertza further noted the absence of "independent and validated measurable clinical evidence." *Id.* at 121.

27. In support of his conclusion, he explained that (1) Dr. Olsen is not a neuropsychologist, and (2) because Dr. Olsen is a treating provider, "the measures performed cannot be considered independent." *Id.*  He further noted that on March 9, 2018, Plaintiff "present[ed] with a mental status that is well within functional limits" based on the fact that he was neatly dressed, alert, attentive, his memory was intact, and he had a normal mood, affect, speech, thought content and processes, as described by Dr. Olsen during the visit. *Id.* at 122.

28. Dr. Hertza also concluded that Ms. Schacther did not provide "measurable clinical evidence of either cognitive impairment of psychiatric impairment that would preclude working." *Id.*

29. On January 9, 2019, Dr. Olsen provided a response objecting to Dr. Hertza's review of the record. *Id.* at 139.  Dr. Olsen argued that he had, indeed, provided "objective data of cognitive impairment," and that he offered to provide "more sophisticated testing should such be requested." *Id.*

30. Dr. Olsen also noted in his response that clinical depression "is a brain disease" and that "[c]ognitive impairment is a core symptom of depressive disorders." *Id.* at 43.

31. On January 22, 2019, Dr. Hertza reviewed and provided a response to Dr. Olsen's January 9, 2019 letter. *Id.* at 114.  Dr. Hertza concluded that his "original opinion remains intact," based on a "lack of congruence between the documentation and claimant's reports." *Id.*  He further explained that

> [it] can easily be remedied with an independent and comprehensive assessment of both psychological and neurocognitive functionality with multiple stand-alone and embedded validity measures (which is the current clinical standard for cases such as this with a disability component).  If the claimant is indeed globally debilitated from both a psychiatric and

ORDER – 10

cognitive perspective, such an assessment will clearly provide definitive support, which is lacking in the current documentation provided for review. Without such independent and validated, measurable evidence, my original concerns remain.

*Id.*

32. Dr. Hertza reiterated his view that "this testing cannot be considered independent, as Dr. Olsen is the treating provider. *Id.*  He concluded his letter by pointing to the "disparity between claimant's reports and the lack of validated clinical evidence in the cumulative documentation to support such global and severe debility as to reasonably preclude all gainful activity." *Id.*  He again stated that this "can be easily remedied with an independent and comprehensive assessment of both psychological and neurocognitive functionality with multiple stand-alone and embedded validity measures." *Id.*

33. On April 22, 2019, Plaintiff's counsel submitted a voluntary supplemental appeal of Prudential's January 3, 2019 decision upholding the denial of Mr. Chapin's claims for STD.  *Id.* at 134.  Plaintiff's counsel argued that Prudential wrongly dismissed Dr. Olsen's opinions and failed to identify any evidence showing Plaintiff is capable of performing his job duties at Microsoft.  *Id.* at 135.

34. On the same day, Plaintiff's counsel also filed a claim for LTD benefits "for the same reasons he is disabled under the STD Policy," noting that Dr. Olsen "tentatively estimates [Plaintiff's] disability will persist for approximately two years." *Id.* at 135; *see also id.* at 161.

35. On May 8, 2019, Prudential stated that additional information was necessary to determine Plaintiff's eligibility for benefits.  *Id.* at 345.  Prudential requested the following:

• Education and Employment History Request (to be completed by Plaintiff);
• Activities of Daily Living Questionnaire (to be completed by Plaintiff);
• Medical and Psychiatric Authorizations (to be completed by Plaintiff);
• Reimbursement Agreement (to be completed by Plaintiff);

ORDER – 11

• Mental Status Examination (to be completed by Plaintiff's doctor); and
• All outstanding medical records from all treating providers for the prior 60 days.

36. On May 27, 2019, Prudential sent Plaintiff a letter nothing that it was unable to make a determination on his claim at that time because it had not received the necessary information. *Id.* at 305. It requested the same forms and records requested in the May 8 letter. *Id.* at 306. Prudential noted that it would require additional time to review the claim. *Id.*

37. On June 5, 2019, Plaintiff provided Prudential with the forms requested by Prudential. *Id.* at 275. Plaintiff also informed Prudential that its "failure to affirm or deny coverage for [his] LTD claim within 45 days violates [his] right to full and fair review of his LTD claim under 29 C.F.R. § 2560.503-1(1)(3). *Id.* The plan permits a maximum extension of two 30-day extensions of this deadline, for a maximum total period of 105 days to determine LTD claims.

38. The same day, Prudential wrote to Plaintiff's counsel, indicating that Plaintiff had not yet provided information necessary for Plaintiff's appeal, despite Plaintiff's counsel's May 16, 2019 representation that such information would be forthcoming. *Id.* at 467. Prudential noted that it was Plaintiff's "responsibility to provide all information that all requirements under the STD policy have been met." *Id.*

39. On June 14, 2019, Plaintiff via counsel, sent Prudential a letter alleging that Prudential's failure to respond to Plaintiff's LTD claim within 45 days of April 22, 2019, which was June 6, 2019, "violates the Department of Labor's regulation enforcing Mr. Chapin's right under ERISA to full and fair review of his LTD claim," pursuant to 29 C.F.R. § 2560.503-l(f)(3). *Id.* at 715.

40. On June 17, 2019, Prudential sent a letter to Plaintiff's counsel stating that it had not received Plaintiff's medical records past October 4, 2018 except for an October 15, 2018 from Ms. Schachter. *Id.* at 465. Prudential stated it would

ORDER – 12

provide Plaintiff additional time to remit the necessary information. *Id.* If Prudential did not receive the information, it would proceed with a review of Plaintiff's claim based on information on file as of July 23, 2019. *Id.* Prudential noted that "[a]ll time frames for the review of Mr. Chapin's appeal will be suspended until the earlier of the receipt of the information requested or the end of the additional 45-day period allowed for [Plaintiff] to supply such information." *Id.*

41. On June 19, 2019, Prudential stated that it was unable to make a determination on the claim and required an extension of time to complete the review. *Id.* Prudential also stated that it needed a "Mental Status Examination as well as complete records from all treating providers from March 1, 2019 forward." *Id.*

42. On July 1, 2019, Plaintiff's counsel sent Prudential a letter stated that Prudential was delaying determination of Plaintiff's benefits by asking for information that had already been provided by Plaintiff. *Id.* Plaintiff's counsel asked Prudential to explain if it disputed Plaintiff's entitlement to LTD benefits and, if so, why. *Id.* Plaintiff's counsel also asked Prudential to state what medical information it relied upon to refuse to pay LTD benefits to Plaintiff. *Id.* Plaintiff's counsel requested that Prudential answer these questions within 14 days. *Id.*

43. On July 11, 2019, Prudential again sent Plaintiff a letter informing him that it was unable to make a determination on his claim and would need more time. *Id.* at 338.

44. On July 31, 2019, Prudential sent a letter to Plaintiff's counsel to inform him that Plaintiff needed to undergo an Independent Medical Examination ("IME") as part of Prudential's appellate review. *Id.* at 336. Prudential scheduled such an exam for August 27, 2019. *Id.*

ORDER – 13

45. On August 9, 2019, Plaintiff filed suit in this Court seeking STD and LTD, over a year after Plaintiff claimed STD benefits and over 15 weeks after Plaintiff claimed LTD benefits.[1]  *Id.* at 290-91.

46.  Following Plaintiff's and Microsoft's settlement of STD claims, Microsoft confirmed that Plaintiff exhausted his STD benefits on September 19, 2018.  *See* Dkt. # 50-1.

## B.   CONCLUSIONS OF LAW

1.  **Plaintiff is entitled to seek benefits pursuant to 29 U.S.C. § 1132(a)(1)(B).**

Pursuant to 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary of an ERISA-governed health plan may "recover benefits due to him under the terms of his plan . . . enforce his rights under the terms of the plan . . . [and] clarify his rights to future benefits under the terms of the plan."  The parties do not dispute that Plaintiff is a "participant" in such a "plan" as defined by 29 U.S.C. § 1002(7) and is thereby entitled to seek benefits under § 1132(a)(1)(B).

**2.  Under Rule 52, the Court evaluates the persuasiveness of conflicting evidence.**

Under Federal Rule of Civil Procedure 52, "an action [may be] tried on the facts without a jury."  Fed. R. Civ. P. 52(a)(1).  "In a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true."  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).

**3.  The Court conducts a *de novo* review of the administrative record.**

The Court reviews a denial of benefits challenged under this provision under a *de novo* standard, as agreed by the parties (Dkt. # 34 at 12; Dkt. # 26 at 18).  *See Firestone*

---

[1] The parties stipulated that Plaintiff's current claim for LTD benefits under the plan was "deemed denied" under ERISA and the plan, and the Plaintiff has exhausted his administrative remedies with respect to his current claim for LTD benefits under the Plan. Dkt. # 30 ¶ 8.

ORDER – 14

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits . . . ."); WAC § 284-96-012(1)("No disability insurance policy may contain a discretionary clause."); *Mirick v. Prudential Ins. Co. of Am.*, 100 F. Supp. 3d 1094, 1097 (W.D. Wash. 2015) ("Washington State law invalidates the attempt to grant deference to [the plan administrator's] claim decision.").  The Court does not give deference to the plan administrator's decision when conducting a *de novo* review of the record but "rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan."  *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010).  The Court must make reasonable inferences where appropriate in evaluating the persuasiveness of each party's arguments. *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F. Supp. 3d 1068, 1078 (W.D. Wash. 2018).

**4.   Plaintiff has the burden of proof to show he is entitled to benefits by a preponderance of evidence.**

When a district court reviews a plan administrator's decision under *de novo* review, "[t]he claimant has the burden of proving by a preponderance of the evidence that he was disabled under the terms of the plan."  *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1162–63 (9th Cir. 2016); *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).  The burden of establishing something by a "preponderance of evidence" requires the trier of fact "to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence."  *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993).

**5.   Plaintiff presented evidence of disability as defined by the Plan.**

Plaintiff provided the opinions of his primary care physician, psychiatrist, and therapist and objective testing of Plaintiff's cognitive functionality. The opinions of the

ORDER – 15

two treating doctors and therapist were consistent in concluding that Plaintiff suffered from depression and anxiety, which resulted in cognitive impairment.  Their view was supported by objective testing conducted by Plaintiff's psychiatrist.  *Id.* at 97-101.  The Court finds this evidence to be compelling at the outset.

The second step in the analysis requires an evaluation of whether the cognitive impairment renders Plaintiff "disabled" under the terms of the Plan.  To establish entitlement for the first 24 months, Plaintiff must establish that he is unable to perform the material and substantial duties of his regular occupation, regardless of specific employer or location.  *See* AR at 180.  The Court finds that the evidence supports that Plaintiff's cognitive impairment precluded him from performing his duties as a software engineer engaged in the type of work he had been doing, which included cognitively demanding tasks including "experimentation, live site analysis, automation design and implementation to monitor and validate e2e functionality," and required "[e]xceptional test aptitude, customer focus and expertise in formal and informal testing techniques as well as quality measurement."  *Id.* at 749.  The results of Dr. Olsen's June 21, 2018 testing revealed significant deficits in psychomotor speed, attention, and immediate and delayed recall that would preclude Plaintiff from performing the material and substantial duties of his regular occupation.  *Id.* at 98.

**6. Prudential's reliance on pure paper review is minimally persuasive.**

Prudential's failure to have its own independent doctors conduct an exam of Plaintiff or perform functionality testing undermines Prudential's position.  *See, e.g.*, *Reetz v. Hartford Life & Accident Ins. Co.,* 294 F. Supp. 3d 1068, 1083 (W.D. Wash. 2018) (finding that doctor's report was "minimally persuasive" because she did not examine the claimant in person).  Indeed, the Ninth Circuit has found that a "pure paper" review of claimant's medical condition "raise[s] questions about the thoroughness and accuracy of the benefits determination."  *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009) (internal quotations and citation omitted).

ORDER – 16

Several significant omissions further undermine the reliability of Dr. Frank's paper review.  First, Dr. Frank's conclusion was based on an incomplete review of the medical records because it omitted any discussion of Dr. Olsen's testing of Plaintiff on June 21, 2018.  *See* AR at 57.  Dr. Frank also failed to address Plaintiff's diagnosis of depression and traumatic stress disorder and focused solely on Plaintiff's anxiety in her discussion of cognitive impairment.  *Id.* at 51.  Similarly, as noted above, Dr. Hertza's disregard of Dr. Olsen's opinion based on a presumption of bias and dismissal of Dr. Olsen's testing because he is a psychiatrist and not a neuropsychologist also raise questions about the reliability of Dr. Hertza's peer review.

The Court finds the observations and findings of Plaintiff's treating doctors who were able to "personally [] observe the effects of [his condition] and assess the credibility of his reports of pain" to be more persuasive than those of Defendant's consultants. *Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d 1311, 1322 (D. Or. 2012).

Here, Prudential denied Plaintiff's claim based on the opinions of two consultants who had never met or examined Plaintiff and who inappropriately concluded that the treating doctors' opinions should be discounted.  The Court therefore finds that Plaintiff's doctors are more probative and reliable than those contracted by Prudential to conduct paper reviews of medical records.

**7. Prudential failed to meet its fiduciary duty to investigate Plaintiff's claims.**

Although Plaintiff carries the burden of demonstrating that he is entitled to benefits, plan administrators have a fiduciary duty to conduct an adequate investigation when considering a claim for benefits.  *Cady v. Hartford Life & Accidental Ins. Co.,* 930 F.Supp.2d 1216, 1226 (D. Idaho 2013); see also *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("[W]hat C.F.R. § 2560.503–1(g) ] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries.... [I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.").  Here, Dr. Hertza repeatedly stated that an independent

ORDER – 17

testing could very easily confirm or deny the validity of testing if necessary. *Id.* at 114. Dr. Olsen too acknowledged that the testing he conducted did not "represent a complete neuropsychiatric battery" and that "[m]ore complex testing of executive functioning can be done if requested." *Id.* at 97-98. But Prudential took no such action in its initial review and did not request any additional testing until seven months after Dr. Hertza conducted his peer review. *Id.* at 118. Nonetheless, it rejected the opinions of Plaintiff's treating doctor, who specializes in psychiatry, Plaintiff's psychiatrist, and Plaintiff's therapist—all of whom reached the same conclusions as to Plaintiff's inability to meet the demands of his job.

The Court finds that Prudential failed to engage in meaningful dialogue with Plaintiff or meet its fiduciary duty to conduct an adequate investigation on this claim. Indeed, a plan administrator may not "shut [its] eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement." *Rodgers v. Metropolitan Life Ins. Co.*, 655 F.Supp.2d 1081, 1087 (N.D.Cal. 2009) (citations omitted).

**8. Prudential ignored the opinions of Plaintiff's treating doctors and therapist.**

Although the opinion of a treating physician is not necessarily accorded greater deference than that of an independent medical consultant, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). In fact, on *de novo* review, a court may "take cognizance of the fact . . . that a given treating physician has 'a greater opportunity to know and observe the patient' than a physician retained by the plan administrator." *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1109 (9th Cir. 2003) (quoting 538 U.S. at 834).

Here, Prudential claims that "[t]he record is clear that Plaintiff can be a capable software engineer, or at least he has no mental illness or other sickness that prevents him

ORDER – 18

from doing so." Dkt. # 51 at 6.  Prudential could only reach this conclusion by ignoring the opinions of Plaintiff's treating doctor, psychiatrist, and therapist.  Wholesale rejection of a treating doctor's opinion without reason is unjustifiable.  *See* 538 U.S. at 834.  It is also inexplicable here, where Prudential has failed to identify any inconsistencies or errors in the diagnoses or opinions presented.  "[I]n refusing a claimant's reliable evidence, the plan administrator should themselves be crediting reliable evidence that conflicts with a treating physician's evaluation."  *James v. AT & T W. Disability Benefits Program*, 41 F. Supp. 3d 849, 874 (N.D. Cal. 2014), *judgment entered*, No. 12-CV-06318-WHO, 2014 WL 4068224 (N.D. Cal. July 18, 2014) (internal quotations and citation omitted).  Plan administrators may not simply dismiss a "treating physician's opinion as insufficient based on [an] absence of supporting medical evidence," without relying on other contradictory evidence.  *Farhat v. Hartford Life & Acc. Ins. Co.*, 439 F. Supp. 2d 957, 973 (N.D. Cal. 2006).  The Court concludes that Dr. Hertza's dismissal of Dr. Olsen's diagnosis and testing results based on the fact that he is a treating doctor is improper.

**9.  Analysis of physical activity irrelevant to analysis of cognitive impairment.**

Prudential points to the fact that Plaintiff continued to exercise as "behavior that conflicted with Plaintiff's claims that he was so incapacitated by depression and anxiety that he could not work." Dkt. # 51 at 8.  The Court finds that evidence that Plaintiff went skiing, hiking, and went to the gym twice per week is irrelevant to Plaintiff's claim that he was unable to perform his job due to cognitive impairment.  *Id.*  Being able to ski, hike, and workout in no way transfers into or supports performance as a software engineer.  Similarly, Prudential's attempt to dismiss Ms. Schachter's opinion that Plaintiff could not work based on her comment that he exercised and volunteered regularly is without merit.  *Id.* at 51.

**10.  The Court finds that Plaintiff has met his burden by a preponderance of evidence and is entitled to benefits from September 19, 2018 through October 31,**

ORDER – 19

**2019.**

Plaintiff has established that he has been disabled from March 20, 2018 through the period in the administrative record.  He exhausted his STD benefits on September 19, 2018.  *See* Dkt. # 50-1.  Dr. Olsen stated that Plaintiff's condition began in autumn of 2017 and would probably continue for two years.  AR at 161.  He conducted objective testing demonstrating Plaintiff's ongoing cognitive impairment in June 2018.  *Id.* 97-101.  Because the administrative record is undeveloped regarding Plaintiff's disability after October 2019, however, the Court makes no determination beyond then and remands to Prudential for further determination of LTD eligibility.  *Bunger v. Unum Life Ins. Co. of Am.*, 196 F. Supp. 3d 1175, 1186 (W.D. Wash. 2016) (citing *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir.1995)).

**11.  The Court remands the appropriate calculation of benefits.**

Because Prudential did not issue a decision with respect to the benefit amount, it would be premature for the Court to decide this matter.  *See Reddick v. Metro. Life Ins. Co.,* No. 3:15-CV-02326-L-WVG, 2017 WL 1094048, at *4 (S.D. Cal. Mar. 23, 2017) (Plaintiff "never raised the issue of improper benefits calculation in the administrative context with [plan administrator] and therefore has not yet exhausted his administrative remedies regarding pre-termination benefits payments").

**12.  The Court enters an injunction pursuant to § 1132(a)(3) requiring Prudential to consider claimant's treating physicians' opinions in evaluation.**

While the persuasiveness of medical evidence is a matter for review, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

## V. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS**:

(1) Plaintiff's Motion for Judgment under Federal Rule of Civil Procedure 52 is

ORDER – 20

1    **GRANTED**.  Dkt. # 49.  Plaintiff established that he is entitled to LTD benefits

2    pursuant to the Plan for the period between September 19, 2018 through October

3    31, 2019;

4    (2)  Defendant shall pay Plaintiff long-term disability benefits from September 19,

5    2018 through October 31, 2019;

6    (3) Plaintiff is entitled to recover pre-judgment interest on all unpaid benefits, and

7    to recover his attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1); and

8    (4) Defendant's Cross-Motion for Summary Judgment is **DENIED**.  Dkt. # 44.

9

10   DATED this 22nd day of March, 2021.

11

12

13   The Honorable Richard A. Jones
     United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER – 21